Bentley Kassal, J.
It was agreed at the trial that the above six commercial holdover proceedings would be tried jointly, since, essentially, the underlying issues are the same, and further that my decision would be applicable to all.
The respondent in all proceedings is the same tenant and all the petitioners landlords are subsidiaries of the Cord Meyer Development Company, Inc. organization. The petitioner lessee, Specialized Parking .Systems, Inc., has executed a new written lease with petitioner landlord and is proceeding under subdivision 11 of section 7.21 of the Real Property Actions and Proceedings Law, claiming that it is entitled to possession by reason thereof.
The properties involved are seven garages and all, except one, have been operated iby respondent for several years pursuant to written and oral leases. The last written leases covering these six garages were for the same leasehold term from April 1,1970 to March 81, 1973. The seventh garage was covered by an oral one-year lease running from June il, 1969 to .May 31, 1970.
Respondent contends it is entitled to remain in possession under an implied lease for three years or, at least, under a year-to-year tenancy. Landlord claims that respondent became a month-to-month tenant upon the termination of the prior leases, and initiated these holdover proceedings after serving tenant with a 30-day notice pursuant to section 232-a of the Real Property Law.
The principal initial issues are the nature of the present tenancies and the legal sufficiency of the service of the 30-day notices.
*757 ■Section 232-c of the Real Property Law provides that when a tenant, whose term exceeds one month, holds over after expiration of the leasehold term and the landlord accepts rent for any period after such expiration, “ then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term.”
During the history of the relationship between the landlord and respondent, intervals of time, ranging from one month up to nine years, have elapsed after the termination of one lease before a subsequent lease has been entered into. Prior to the termination of the most recent written leases, concededly there had been some preliminary negotiations between the parties in regard to new leases. However, no agreements were reached and the landlord notified the tenant by letter that “ pending any possible or future negotiations, you may remain on and continue operation on a ‘ month to month ’ basis ’ ’. On April 11, 1973 the respondent wrote to inform the landlord that * ‘ we would like to meet with you to discuss the renewal of these leases as soon as possible * * * i am sure you can clearly understand the necessity of our knowing the terms and duration of our leases in future planning and investment.”
Negotiations continued, but on July 27, 1973 the landlord notified. respondent of its intention not to renew its leases. Finally on October 1, 1973 landlord served a 30-day notice to terminate the tenancy on October 31, 1973.
In view of the above history, whatever other ambiguous statements may have been made during the course of negotiations, it is clear that no agreement, either express or implied, was arrived at or before the termination of the most recent leases. Therefore, the only tenancy which could be created would be by operation of law as a result of the acceptance of rent by the landlord after such termination. I find this to be a month-to-month tenancy, and this determination applies to all tenancies including the one previously under oral lease. (See Bay West Realty Co. v. Christy, 61 Misc 2d 891.)
Regarding the timeliness of the notice to terminate, it is conceded that the landlord served respondent with the 30-day notice on October 1, 1973. Respondent argues: (1) that, under the circumstances, a six-month notice is required; (2) that such notices were not served ‘1 at least 30 days before the expiration of the term ”, and lastly, (3) that such notices were invalid on *758 the ground that they were served in violation of an order of the Supreme Court.
In regard, to the first contention, since I have found that respondent was a month-to-month tenant, only a 30-day notice to terminate was required under section,232-a of the Real Property Law.
As to the tenant’s second position, namely, that the 30-day notice was not served timely, the rule for determining the time in which an act must he done is to exclude the first day and include the last. (Pomeranz v. More, 187 Misc. 383.) Thus, excluding the day on which the reckoning is made, the notice was served exactly .30 days prior to such date, and in compliance with section 232-a of the Real Property Law.
Finally, as to the question of whether the 30-day notice was in violation of a stay issued by Judge Louis Wallace on September 11, 1973 respondent has not demonstrated to this court in this proceeding that there has been such a violation.
Indeed, there may possibly be questions as to whether the service of a 30-day notice did violate the terms of an oral stay or whether a stay was in effect on the date of service. However, for the purposes of this proceeding, 1 find that the appropriate notices were properly served. Of course, this determination is without prejudice to any Supreme 'Court application.
"Tenant further claims that one of petitioner’s employees, William J. Von Vange, who concededly is the operations manager for petitioner’s properties, was authorized to act for petitioner in the negotiation and execution of leases and that he did, in fact, do ,so. I find that there was no proof of such authority, actual, apparent or implied and further that there was no proof that he negotiated any lease agreements with respondent, either with or Without authority. At best, accepting all of the inferences to be drawn from the testimony of Von Vange and respondent’s witnesses, Von Vange was being “wined and dined” by respondent and may have expressed his personal views about the prospects of respondent receiving new leases, but clearly, from the proof, he did not have any authority to negotiate leases nor did he.
Numerous motions were made at trial. Some were disposed of when made and those upon which decision was reserved are decided by the above determination. All affirmative defenses are stricken.
. Therefore, judgment of possession is granted to both petitioners, but the same is stayed pending a hearing to be held before me at Trial Term, Part 49 in Civil ¡Court, New York *759 County on the 30th of January, 1974 at 2:00 p.m. to determine: (1) Whether there should be a stay on the issuance of warrant herein and, if so, the extent thereof; and (2) The amount for use and occupancy to which landlord is entitled for the period subsequent to the termination of the leases.
Final judgment for the petitioners in all proceedings.
(February 15, 1974)
The hearing before me on February 11, 1974 was concerned with the issues of use and occupancy, whether a stay should issue on the execution of the warrant of eviction, and, if so, the duration of that stay and, lastly, what other conditions should attach to any stay.
I. Use and Occupancy
The garage properties fall into two categories, namely, the six that have been leased to Specialized Parking Systems, Inc. (copetitioner lessee) and the Balfour garage, which the landlord intends to operate itself.
Under section 601 of the Real Property Actions and Proceedings Law the landlord is entitled to recover for use and occupancy of the property as an incident to an action to recover possession. This is the reasonable rental value for the period of occupation. (Rasch, Landlord and Tenant [2d ed.], vol. 1, § 281.)
(a) Six Garages
The only evidence presented was the landlord’s, by way of the six new leases entered into with Specialized. In view of the fact that these leases were executed prior to the termination of the leases with respondents, were an arm’s length deal with strangers, weré for a long period of time and, lastly, that there was no evidence to the contrary, these leases with Specialized do qualify as proper measuring rods for each of these properties.
Therefore, I am finding that the monthly use and occupancy for each of the garages are fixed on the following bases, with the effective date for same to be as of November 1,1973.

Garage Monthly use and occupancy

Continental $2,833.33
Forester $1,750.00
Forest Hills $1,166.66
Meadow Lake $ 583.33
Willow Glen $ 541.66
108-18 Queens Blvd, $1,100.00
*760 (B) Balfour. Garage
The Balfour garage situation presents another picture, since the landlord is going to operate this garage itself on .a different basis in that it will be self-parking — no garage attendants. Therefore, in ascertaining the fair rental value to the landlord, its anticipated net profit must be determined based upon a projection of gross rentals (on this self-parking basis) less the reasonable expenses in operating the premises. (See Amorose v. Price, 142 N. Y. S. 2d 922, affd. 1 A D 2d 815; Rae v. Sutbros Realty Corp., 6 A D 2d 716, amd. 6 A D 2d 718, affd. 6 N Y 2d 963.)
Employing this formula, the first element is gross rentals. Landlord’s witness testified that rentals were expected to be about the same level as the two previous fiscal years, which was $38,923. This was disputed by the respondent’s witness and I find this figure not easily acceptable since this will be a new operation, without .any service and with automated security devices. This is not realistic. Therefore, I am finding that the figure of $35,000 per annum is the proper basis for gross rentals.
With regard to the expenses attendant upon such new operation, landlord’s witness testified only in very general terms. I cannot agree with his optimistic expectation that the total expenses will be a maximum of 5% of the rentals. No evidence was presented as to the cost of the required new installations, such as the automated doors and other expensive security features. I am also not satisfied from the evidence that the existing apartment house personnel could alone manage the new setup, nor that the expense figures for insurance, bookkeeping, utilities are reasonable.
Accordingly, I find that computing the gross rentals at $35,000 per annum and the expenses at a realistic figure of $5,000 results in use and occupancy of $30,000 per annum or $2,500 monthly and I so find.
(c) Judgments are simultaneously being entered providing for the following monetary sums, representing the use and occupancy above fixed, less the sums that tenant has paid landlord on account, without prejudice, in accordance with the court’s direction:

Garage Judgment

Continental $ 10.92
Forester $ 956.56
Forest Hills 0.00
Meadow Hills $ 41.32
*761 Willow Glen $ 122.64
108-18 Queens Blvd. $ 400.00
Balfour $4,812.80
II. Stay
The court is cognizant of these facts: (a) Tenant has known since at least the 1st of October, 1973 that landlord was seeking possession of the premises from tenant; the trial ended on December 10, 1973 and the decision on the trial was issued on January 24, 1974. Therefore, this cannot in any manner be deemed precipitous action, (b) Tenant concededly has no heavy equipment or substantial installation to remove, (e) Tenant on the basis of the stay herein will have had a total period of six months from the service of the 30-day notice on October 1, 1973 to have made alternate arrangements for personal and claimed financial entanglements. The court is not impressed with the fact that some prepaid rentals have to be returned. There is no surprise, and improper contingency planning by tenant cannot operate as a means for extending the stay.
Therefore, I am granting a stay on the execution of the warrant of eviction until February 28, 1974. However, if the said judgments herein have been paid in full on or before that date, then there shall be a further and final stay until the 31st of March, 1974. In the event that landlord has not been paid for use and occupancy for the month of March, 1974 on or before 5:00 p.m. on the 5th of March, 1974 then the stay shall be accelerated so that it terminates on the 5th of March, 1974.
III. Copetitioner’s Application for a Bond
I am declining to require tenant to post a bond herein in favor of copetitioner, Specialized, as requested by it.. In view of the stay period, I see no reason why the court at this state should impose this condition.
Finally, all the foregoing is without prejudice to any plenary action by Specialized for damages and by petitioners for any claimed further damages. This statement shall not be deemed a determination as to whether there are damages recoverable by copetitioner or any further damages recoverable by petitioners.
Final judgment for petitioners and copetitioners, awarding possession with judgment for petitioners as stated. The warrant of eviction shall issue forthwith and its execution shall be stayed as hereinabove provided.