OPINION OF THE COURT
James F. O’Donoghue, J.
The issue presented is whether section 27-2009.1 of the Administrative Code of the City of New York (commonly referred to as the Pet Law) is applicable to condominiums.
*875 The plaintiff, the Board of Managers of a condominium located in Howard Beach, Queens, moves by order to show cause to enjoin the defendants from keeping a dog in their apartment or in or about the common areas of the condominium complex. The defendants, a husband and wife who own and occupy one apartment, oppose the application and cross-move for summary judgment dismissing the underlying action and awarding them counsel fees.
The Board of Managers (the Board) alleges that its bylaw rules and regulations prohibit apartment owners from having pets (unless specifically authorized by the Board). The defendants claim that they are entitled to the protections afforded by the Pet Law and therefore under the terms of the statute the Board has waived its right to enforce its bylaw regulation. The Board asserts that the Pet Law is not applicable to condominiums.
Although the history of events between these parties is over nine years old and concerns a now deceased pet, the "grandfathering-in” of previously approved pets and several ancillary matters, the factual issues which are before this court and are germane to the issue to be resolved are simple and straightforward.
The rules and regulations of the condominium bylaws contain the following provision: "No animal of any kind shall be kept or harbored in the premises unless the same in each instance be expressly permitted, in writing, by the Board of Managers, and such consent if given, shall be revocable by it at any time”.
There is no question that the defendants have a dog (Petie Lamontanero) and that the Board has not given the defendants permission to have this dog. There is also no question that the Board acknowledges being aware of this animal since April 28, 1991 (the defendants claim Apr. 21st) and that this action was commenced on July 29, 1991. The defendants argue that this proceeding is barred by the three-month limitation period found in the statute. The Board responds, that as the statute is not applicable to condominiums, this issue is of no consequence, its rules and regulations should be enforced and Petie (the dog) removed. This court believes that section 27-2009.1 of the Administrative Code is applicable to condominiums, the Board has waived its right to enforce its bylaw regulation and therefore, Petie stays.
Section 27-2009.1 of the Administrative Code was enacted in *876 October 1983. In effect this statute provides that when the owner of a building prohibits the occupants of that building from having household pets, the owner must take legal action to enforce that prohibition within three months of the date it or its agents became aware of the violation.
The statute does not specifically include or exclude condominiums. It is conceded to apply to rental multiple dwellings and has been applied to residential cooperative buildings (see, Linden Hill No. 1 Coop. Corp. v Kleiner, 124 Misc 2d 1001).
The statute is specific insofar as it excludes only one form of multiple dwelling, those buildings owned and managed by the New York City Housing Authority. No explanation is offered as to why condominiums were not similarly excluded. Had they chosen to, the City Council could have easily broadened their exclusion or defined with specificity those structures and/or persons for whom the statute’s coverage was intended.
"As set forth in section 240 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1): 'Where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned’. * * *
"[A]s set forth elsewhere in McKinney’s Statutes (op cit., §74): 'when the Legislature by the use of general language has given an act a general application, the failure to specify particular cases which it shall cover does not warrant the court in inferring that the Legislature intended their exclusion. On the contrary, in such cases, if the Legislature did not intend the act to apply to such cases, "it would have been easy to have said so.” ’ ” (Corlear Gardens Horn. Co. v Ramos, 126 Misc 2d 416, 419-420.)
In one of its last meetings before passage of this legislation, the City Council’s Committee on Housing and Buildings heard testimony from witnesses regarding the need to specifically exclude the Housing Authority. Their report contains the following discussion: "The last section of the bill which exempts the New York City Housing Authority from the provisions of this new section is included in the amended version of the bill in deference to testimony received from NYCHA witnesses at the hearing of June 29, 1983 which testimony indicated that NYCHA provides its own administrative procedures (which include counseling and hearings) with respect to the termination of tenancies. This exemption also respects the distinction traditionally afforded the NYCHA pursuant to Section 2 of the Public Housing Law” (emphasis added).
*877 It would also have been a very simple task for the committee to enunciate an exclusion for condominiums based upon distinctions between this type of housing and rental or cooperative buildings. Clearly the City Council chose not to make this distinction.
The statute’s legislative declaration provides some assistance in interpreting the purpose and breadth of this legislation. Factors which are enumerated in the declaration include:
1. Abuses in the enforcement of covenants which prohibit the harboring of household pets;
2. Eviction of the tenant and/or the pet for reasons unrelated to the creation of a nuisance;
3. The finding that household pets are kept for reasons of safety and companionship;
4. The need to protect pet owners from retaliatory eviction; and
5. To safeguard the health, safety and welfare of tenants who harbor pets.
None of these concerns are limited only to persons who own or occupy rental or cooperative apartments in multiple dwellings. In fact, the condominium regulation which the plaintiff Board now seeks to enforce appears to this court to be ripe for the protections found in section 27-2009.1.
The bylaw regulation in question permits the Board of Managers to revoke its permission to have a pet at any time and for no reason whatsoever. This, the defendants argue, is patently unfair for it places the defendants and every other owner in the precarious position of having to anticipate the actions of the Board after consent is given. Consent can be revoked without any inquiry or determination that the pet is a nuisance or has caused damage. The plaintiff Board assures this court that they are reasonable, lenient and considerate people and seek only to do that which is in the best interests of all owners. Therefore, they argue, they would never exercise or intend to exercise poor judgment regarding these matters.
It does not appear to this court that the sole reason for implementing the subject legislation was to prevent the unfair actions of irresponsible or vindictive building owners. It also appears to have been the City Council’s intention to provide New York City residents with some reasonable degree of comfort and assurance that they would not be forced to give *878 up their pets after (be it express or implied) the building owner’s consent was given.
The plaintiff has attempted to select certain words or phrases in the statute to support its interpretation of legislative intent. The Board points to references such as "eviction”, "tenants” and "leases” to establish its theory that the statute applies exclusively to landlord and tenant relationships (i.e., rent-stabilized or rent-controlled buildings and cooperatives). The defendants counter by attempting to show that under the Real Property Law, a Board of Managers of a condominium can be construed as having the same function as a landlord and therefore this type of relationship can be inferred. This analysis is too limiting. For example, how does one explain that nowhere in the statute does the term "landlord” appear? The statute uses the term "owner”.
Assuming this type of analysis would be helpful, this court is persuaded that the statute’s operative phrase is "multiple dwelling”. A uniform application of the statute’s protection is afforded to all occupants of multiple dwellings (except Housing Authority buildings), and a condominium is not only a multiple dwelling, but pursuant to Real Property Law, article 9-B, § 339-ee (the Condominium Act), subject to the provisions of the Multiple Dwelling Law. (See, May Co. v Department of Health, 123 Misc 2d 1010.)
Having found Administrative Code § 27-2009.1 applicable to condominiums, this court must also determine if the plaintiff has waived its right to enforce its bylaw regulation. Although there is dispute over the exact date the dog was discovered (both parties concede Apr. 28, 1991, the defendants claim it was one week earlier, on Apr. 21st) it is clear that this action was commenced on July 29, 1991. Using the date least favorable to the defendants (Apr. 28), it appears that the plaintiff Board has waived its right to enforce its bylaw regulation.
The statute provides that a proceeding or action must be commenced within three months from the date the animal is or could have been discovered. General Construction Law § 30, months, computation, provides: "A number of months after or before a certain day shall be computed by counting such number of calendar months from such day, exclusive of the calendar month in which such day occurs, and shall include the day of the month in the last month so counted having the same numerical order in days of the month as the day from which the computation is made, unless there be not so many *879 days in the last month so counted, in which case the period computed shall expire with the last day of the month so counted.”
"[T]he rule for determining the time in which an act must be done is to exclude the first day and include the last”. (Seminole Hous. Corp. v M & M Garages, 78 Misc 2d 755, 758, citing Pomeranz v More, 187 Misc 383.) Therefore even assuming the later date of April 28, 1991 is accurate the plaintiff was required to commence this action no later than July 28, 1991. Plaintiff’s failure to do so is deemed a waiver of its right to enforce this bylaw regulation against the defendants.
Finally the court is requested to award counsel fees to the defendant. Condominium’s Declaration, article XVIII, § 3 provides: "In any proceeding arising from an alleged default by a unit owner, the prevailing party shall be entitled to recover the cost of the proceeding and such reasonable attorneys’ fees as may be determined by the Court.”
The defendants’ actions have been described by the plaintiff Board, in its own complaint, as constituting a "default” by the unit owners. Therefore, reasonable attorney’s fees are awarded to the prevailing party, the defendants.
Plaintiff’s application for a preliminary injunction is denied. Defendants’ cross motion for summary judgment and counsel fees is granted.