S. Samuel Di Falco, J.
Plaintiff sues defendant to recover the sum of $12,500 which, it is alleged, defendant contracted to pay to plaintiff as the purchase price of 50 shares of common stock of no par value of the Fair Maid Cottons, Inc., a corporation in which both plaintiff and defendant were stockholders. While the complaint is framed upon a cause of action for damages for breach of contract, it was amended at the trial so as to include a claim for the purchase price specifically agreed upon in the sum of $12,500.
The proof established, and I find, that the parties had been engaged actively in the business of the corporation known as Fair Maid Cottons, Inc., that after some talk, wherein plaintiff told defendant of his dissatisfaction with the affairs of the corporation, it was agreed between them that defendant would purchase plaintiff’s stock in the corporation. On or about April 1,1955, at defendant’s place of business, defendant agreed to purchase plaintiff’s 50 shares of common stock of no par value in said corporation for the agreed price of $12,500. Thereupon the defendant advised his attorney in New Jersey to prepare all the necessary papers and documents to effect such sale and the transfer of the stock. A few days later all of the papers in connection with the transfer were forwarded *286 to plaintiff as prepared by defendant’s attorney. Immediately upon the agreement of April 1 taking place, the defendant took over the sole and exclusive management of the corporation and of its assets and no longer consulted with plaintiff or any of the other stockholders concerning the company’s affairs. He also changed the lock on the door of the premises to one of his own. To most of the testimony concerning this phase of the litigation there is no real dispute as the defendant admitted he handled the affairs of the corporation himself, made distribution to creditors in his own manner, and that purchases were made without consulting plaintiff.
Plaintiff made consistent and repeated demands upon the defendant to pay the $12,500 agreed upon and to execute the papers prepared by his attorney. In addition, after such demands were ignored, he then attempted to sell the stock on the open market to protect his property interest but could not effect same because defendant would not make available to a prospective purchaser the books of the corporation. Despite all efforts to sell the stock in the open market or to get the defendant to pay the purchase price agreed upon and sign the papers, defendant refused and failed to co-operate or to consummate his agreement.
The defendant conceded the negotiations had and that he discussed the matter with his attorney but denied that the matter was concluded. He denied he had instructed his attorney to forward the papers to the plaintiff. However, the fact is, and the proof established, that there were some 15 documents prepared by defendant’s attorney which were forwarded to plaintiff, constituting exact and concise figures and requirements to close the transaction. Defendant admitted that there were no longer any assets in the corporation and that the corporation ceased active participation in commercial affairs.
Upon the evidence presented, I am persuaded that plaintiff has established his case by a preponderance of the credible proof and is entitled to prevail. The defendant is required to live up to the agreement made upon which he accepted all the benefits, took over the corporation and actually executed the agreement except for the formality of the papers required to be signed. In this respect I am confronted with the legal argument of defendant that the complaint must be dismissed upon the grounds that (1) the Statute of Frauds covered by section 85 of the Personal Property Law is a complete and valid defense to the action; (2) plaintiff has not proved damages; and (3) plaintiff has not sustained his burden of proof by a fair preponderance of the evidence.
*287 As to the latter grounds, I have already found hereinbefore that the record of testimony and evidence adduced before me adequately established to my satisfaction the credibility of plaintiff’s case and that it is sustained by a fair preponderance of the credible evidence. As to the first two grounds, the plaintiff, as an unpaid seller of personal property, is entitled to recover the purchase price agreed upon where title passed. Shares of stock are “ goods” within the provisions of the Personal Property Law (Coyne v. Chatham Phenix Nat. Bank & Trust Co., 155 Misc. 656; Bishop v. Tracy & Co., 237 App. Div. 496; Agar v. Orda, 144 Misc. 149, affd. 239 App. Div. 827, affd. 264 N. Y. 248). Sections 99 and 100 of the Personal Property Law provide as follows:
“ § 99. Property in specific goods passes when parties so intend.
“ 1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.
‘ ‘ 2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, and conduct of the parties, usages of trade and the circumstances of the case.
“ § 100. Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.
“ Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.”
Since the “ goods ” here sold were specific and ascertained title passed when the contract was made. The parties’ intentions are borne out by the fact that defendant actually took possession of the corporate business and conducted same as his own. The fact that plaintiff retained possession of the stock itself did not prevent the passing of title thereto to the defendant. Rule 1 of section 100 afore-stated, provides unequivocally that delivery is not a condition to the passage of title where there is an unconditional contract, as here, to sell specific goods in a deliverable state. Furthermore, by paragraph (a) of subdivision 1 of section 134 of the Personal Property Law, it is provided that the seller has the right to retain possession of the goods, notwithstanding title is passed, pending payment of the purchase price. Applying then sub *288 division 1 of section 144 of the Personal Property Law it is there provided that: “ 1. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods.”
Title having passed, therefore, the seller may recover the purchase price (Haughey v. Belmont Quadrangle Drilling Corp., 284 N. Y. 136, 141). Even if title had not passed, the plaintiff would be entitled to the damage incurred by an unpaid seller which would normally be the difference between the contract price and the market price where there is a market, or the estimated loss directly resulting from the breach. Section 145 of the Personal Property Law states:
‘ ‘ § 145. Action for damages for nonacceptance of the goods.
‘ ‘ 1. Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.
“ 2. The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer’s breach of contract.
“ 3. Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.”
Here, as I have found, the “ goods ” consisted of stock of a closed corporation and had no ready open market. The defendant had appropriated the corporate business and prevented access to the books and records of the corporation. Resale of the stock was frustrated; it had no value on the open market due to defendant’s conduct. The loss to plaintiff by virtue of defendant’s conduct and breach of his contract to purchase the stock was the actual contract price. In Todd v. Gamble (148 N. Y. 382) the court held that where there is no market price for the article contracted to be sold and title had not passed, and the buyer repudiates the contract, the seller may recover as damages the difference between what it would have cost Lim to manufacture or furnish the article and the contract price. Here it would have cost plaintiff nothing to furnish the stock and the same was valueless in his hands. It follows that even if title had not passed plaintiff would be entitled to recover his loss, which in this case is the purchase price.
*289 The foregoing constitutes the decision of the court as required by section 440 of the Civil Practice Act. Judgment is directed for the plaintiff against the defendant for the sum of $12,500 with interest. Thirty days’ stay and 60 days to make a case.