IRENE SILVERMAN, Appellant, v. ALCOA PLAZA ASSOCIATES, Respondent.

First Department, July 1, 1971.

*John S. Dorf* of counsel (*Robert F. Little* with him on the brief of *Berg, Mezansky & Dorf; Cox, Treanor & Shaughnessy,* attorneys), for appellant.

*Joseph Zuckerman* of counsel (*Rosenman Colin Kaye Petschek Freund & Emil,* attorneys), for respondent.

MURPHY, J.   The appellant had deposited the sum of $15,400 with the respondent on account of the purchase of shares of stock and a proprietary lease in a co-operative apartment.   The total purchase price was to be $154,000.   By reason of what was described as " uncertain business condition " the appellant defaulted.   The facts are not in dispute. Some time later on learning that respondent had sold the shares and proprietary lease to the apartment to another for the same price the appellant instituted suit to recover the down payment.   Respondent moved for summary judgment dismissing the complaint on the theory that plaintiff had willfully breached the contract involving the sale of real estate resulting in the forfeiture of the deposit.   Appellant opposed the motion and sought to restrict the loss of her deposit to the actual damages provable by the respondent, if any.   The lower court held that the stock could not be characterized as " goods " under article 2 of the Uniform Commercial Code but rather would fall within an area not regulated by statute where decisional law has established that the seller is entitled to retain the deposit citing *Kaplan* v. *Scheiner* (1 A D 2d 329).   Having determined that the transaction was one involving the sale of real property, the lower court made its decision in accordance with the law of damages relating to realty.

If the stock and proprietary lease in a co-operative are considered realty, the seller (respondent) is entitled to retain by way of forfeiture the down payment, without proof of damages. This rule of damages is peculiar to actions involving real property. Perhaps it is the involved nature or uniqueness of real property that justifies such a rule, for it cannot be argued that courts generally are loath to enforce forfeiture and penalty clauses, and that only in specific instances (such as damages relating to the breach of a contract of the sale of realty) are they enforced. This is so even if there be no express clause to the effect (see 1A Warren's Weed, N. Y. Real Property, Contracts, § 11.01).

The crucial issue presented is whether or not the underlying sale of the stock and proprietary lease in the co-operative apartment was one of realty or personalty. The parties correctly agree that the law of damages in each of these categories is dissimilar. Thus, determination of the classification, that is, real property or personalty of the subject matter of this action, will, of necessity, dictate the rule of damages to be followed.

The court below has held that article 2 of the Uniform Commercial Code is inapplicable to the property which constitutes the subject matter of the case at bar. The plaintiff, on the other hand, relies on the protection afforded it by subdivisions (2) and (3) of section 2–718 of the said act which would entitle the plaintiff to a return of her down payment, less any damage occasioned the defendant-respondent by reason of the breached contract of sale.

An examination of the authorities fails to reveal a single appellate case relating to this problem, except for *Kaplan* v. *Scheiner* (*supra*). The decision in that case is not dispositive of the case at bar, however, for the reason that the contract in that case provided for liquidated damages on a breach thereof. No such clause appears in the contract of sale presently at issue. In the *Kaplan* decision there is dictum which would suggest that the rights of the parties would be the same with or without the liquidated damage clause. However, that case was decided prior to the enactment of the Uniform Commercial Code and, accordingly, is not controlling as the code is specific with respect to its remedies wherever applicable. It is to be noted that the adoption of the Sales of Goods Act (Personal Property Law, art. 5) in 1911 deprived a seller of " goods " as defined in the act as a former common-law right to sue for the agreed upon purchase price if the buyer defaulted. In the case of *Agar* v. *Orda* (264 N. Y. 248 [1934]) where a seller of 200 shares of stock of a pri-

vate corporation sought to recover the agreed upon purchase price the court said: "Concededly, if certificates of stock are 'goods' within the definition of the Sales Act, the complaint was properly dismissed * * * The rule has been shattered by the Legislature. It no longer can be applied to contracts for the sale of 'goods,' and goods, as defined by the statute, include, 'all chattels personal other than things in action and money.' (§ 156.) The problem is whether a fragment of the shattered rule still persists and is applicable to sales of certificates of stock." (pp. 250, 251).

The court further held that the term "goods" as used in the statute, included stock certificates. The cases of *Ballentine* v. *Ferretti* (255 App. Div. 606); *Coyne* v. *Chatham Phenix Nat. Bank & Trust Co.* (155 Misc. 656); *Matter of Galewitz* (206 Misc. 218); *Rosenzweig* v. *Salkind* (6 Misc 2d 284); *Kukoff* v. *Muss* (6 Misc 2d 807) are some of the cases in which *Agar* v. *Orda* (*supra*) was followed prior to the adoption of the Uniform Commercial Code in which securities were ruled to be "goods" as that word was used in article 5 of the Personal Property Law.

Section 145-a of the Personal Property Law became effective on September 1, 1952. This section provides that in the absence of a liquidated damage clause, the seller is restricted to his damages and may not defeat the buyer's right to restitution of his down payment. There is no liquidated damage clause in the contract at issue on this appeal. It thus appears that for the fact that the Uniform Commercial Code has superseded the Sales of Goods Act that this appeal would have been controlled by section 145-a of the Personal Property Law. However, article 5 of the Personal Property Law has been repealed and replaced by article 2 of the Uniform Commercial Code. Since then the courts have approached the problems of statutory construction in the same spirit as that displayed in the *Agar* case (*supra*). In *Division of Triple T Serv.* v. *Mobil Oil Corp.* (60 Misc 2d 720, 727), in applying the Uniform Commercial Code to a franchise agreement, the court stated: "However, the courts have not been reluctant to enlarge the type of commercial transactions clearly encompassed within the spirit and intendment of the statute (see *Agar* v. *Orda*, 264 N. Y. 248, holding that under the former Personal Property Law [Uniform Sales Act] — the predecessor to the Uniform Commercial Code — a sale of corporate stock certificates constituted a sale of 'goods'; *Vitex Mfg. Corp.* v. *Caribtex Corp.*, 377 F. 2d 795, holding damage remedies provided for in the Uniform Commercial Code available in a non-code case * * *)".

" Goods " are defined in the repealed article 5 (§ 156) of the Personal Property Law as including " all chattels personal other than things in action and money." In subdivision (1) of section 2–105 of the Uniform Commercial Code " goods " are defined as meaning " all things * * * which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action ".

It would thus appear that there is no substantial difference between the definition of goods in the quoted section unless the exclusion of investment securities in section 2–105 of the Uniform Commercial Code constitutes a change. Rather than creating a change, this court believes that the exclusion of " investment securities " and the definition of " goods " was an effort to make article 2 and article 8 harmonious rather than mutually exclusive. We believe that the term " investment securities " as defined in article 8 does not include co-operative apartment stock. We believe that even if article 8 is deemed to apply to co-operative apartment stock, that article 8 is to be read in conjunction with article 2, and where article 8 is silent, article 2 is applicable. The official comments upon the Uniform Commercial Code as set forth in McKinney's Consolidated Laws of New York (Book 62½, Part 1) with special reference to pages 96–97 which are pertinent to the case at bar read as follows: " ' Investment securities ' are expressly excluded from the coverage of this Article. It is not intended by this exclusion, however, to prevent the application of a particular section of this Article by analogy to securities (as was done with the Original Sales Act in *Agar* v. *Orda,* 264 N. Y. 248, 190 N. E. 479, 99 A. L. R. 269 (1934)) when the reason of that section makes such application sensible and the situation involved is not covered by the Article of this Act dealing specifically with such securities (Article 8) ".

It would thus appear that even if co-operative stock were to be considered as an investment security, the provisions of article 2 would still govern in areas such as the court is presently confronted with when article 8 is silent. However, it would appear that by definition co-operative apartment stock does not fall within the definition of investment securities as set forth in the Uniform Commercial Code. An investment security is defined in section 8–102 as follows:

" (1) in this Article unless the context otherwise requires

" (a) A ' security ' is an instrument which

" (i) is issued in bearer or registered form; and

" (ii) is of a type commonly dealt in upon securities exchanges

or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

" (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

" (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."

In the New York Annotations of the Official Comments appearing at page 159 of McKinney's Consolidated Laws of New York, Uniform Commercial Code (Book 62½, Part 3) it is noted as follows: " Article 8 is intended to supplant the New York Negotiable Instruments Law (hereinafter cited as N.I.L.) insofar as that law applies to investment securities (principally bearer bonds), the Hofstadter Acts (Personal Property Law, §§ 260 et seq. and §§ 186 et seq.), the Uniform Stock Transfer Act (Personal Property Law, §§ 162 et seq.), and the Uniform Act for Simplification of Fiduciary Security Transfers (General Business Law, §§ 359-m et seq.)." It would be extremely illogical to contend that the Legislature intended to turn the clock back with respect to the broad range of stock certificates covered by article 8 to the situation which prevailed when the rights of the parties were governed by the common law as it existed in this State prior to the enactment of the Sales of Goods Act.

EPTL 13–1.1 provides as follows:

" Certain assets considered personal property.

" (a) For purposes of the administration of an estate, the following assets of the decedent are personal property and together with every other species of personal property pass to the personal representative:

" (1) Estates for years in real property ".

In *Matter of Miller* (205 Misc. 770 [Surrogate's Ct., N. Y. County, 1954]), a co-operative apartment in New York City was held to pass under an estate as personal property and was held not to be subject to the portions of the will which dealt with real property.

It is clear that the intentions of the parties to this contract were to treat this as a contract for the sale of personalty and not real property. The contract contains none of the classic clauses that are found within the standard real estate contracts. No questions relating to the marketability of the property are set forth within the contract. Nor are there provisions for the execution or delivery of a deed, or a provision for title insurance. In addition, there is no provision for payment by the seller, nor does the defendant claim that it paid to the City of New

York any New York City real property transfer tax. There was no provision for payment of revenue stamps on any instrument of any kind. As a matter of fact, the contract in question called for the payment of the required stock transfer stamps, rather than any revenue stamps.

In the case of *Susskind* v. *1136 Tenants Corp.* (43 Misc 2d 588, 590), the court said: " In legal theory, a corporation is an entity distinct and separate from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation * * * In an apartment co-operative, then, the corporation is sole owner of the land and building (4 Powell, Real Property, *supra*, ¶ 633.11). *It is the shares of the corporation that are sold, and despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease (People ex rel. McGoldrick v. Sterling, 283 App. Div. 88.)* The lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement ".

In passing on the nature of the proprietary lease which a shareholder in a co-operative acquires, the court further held that such lease is *personalty and not realty* (italics supplied).

It thus appears that a proprietary lease is no different from any other type of lease. It is personal property. Co-operative apartment stock is nevertheless stock, like any other stock in a corporation owning real estate. It does not appear that the pairing of the two together does anything to create a new classification of real estate. Important too, to the consideration herein, is the fact that the law frowns upon forfeiture or penalty. True as stated there are specific instances where the law mandates forfeiture as well as penalty. These situations are however limited in kind and scope and should not be unduly expanded except when clearly mandated.

We hold, then, that the shares of co-operative stock relative to the proprietary lease presently before this court are " goods " within article 2 of the Uniform Commercial Code; that they, and the deposit made under the contract with respect to them by the parties to this action, are subject to article 2 of the Uniform Commercial Code and the rights of the parties accordingly should be disposed of in accordance with section 2–718 of article 2.

Under the circumstances, the judgment of the lower court should be reversed on the law, plaintiff's cross motion for summary judgment should be granted, and the matter remanded to the trial court for a hearing with respect to damages, if any, with costs to appellant.

STEUER, J. (dissenting). We dissent and would affirm the judgment directed by Special Term.

Plaintiff entered into a written contract to purchase 1,540 shares of a co-operative apartment building for $154,000 and paid a deposit of $15,400 toward the purchase price. She deliberately and intentionally defaulted on the closing date, having given notice that she so intended. She did not then, nor does she now, advance any reason or excuse for her breach other than her view that the purchase might have proven inexpedient in the light of the current business situation. She sues for the return of the deposit.

The question is whether she forfeits the deposit by virtue of the breach or is only liable for whatever damages the seller can establish. The first underlying factor in the resolution of that question is whether the sale should be considered as one of personalty or realty. If the latter, there is really no question at all because it is the established law of this jurisdiction that a prospective buyer of realty who breaches his contract of purchase forfeits all rights to any deposit made on account of the purchase (*Lawrence* v. *Miller,* 86 N. Y. 131; *Cohen* v. *Kranz,* 12 N Y 2d 242). Concepts of what is realty and what personalty are not static and are no exception to the proposition that the law accommodates to new developments as they occur. Co-operative apartments made their appearance long after classic distinctions between realty and personalty were formulated, and the guidelines to classification should be established by the inherent nature of the property right rather than mere superficial resemblances to other forms. This is no new idea. For instance, while a lease for 99 years is still a lease, it is nevertheless realty, because, despite the form, in actuality the leaseholder has all the attributes of ownership.

Applying the principle to the co-operative shares, it is at once apparent that the dominant characteristic of such shares is the right to a proprietary lease, which is the essential and particularizing aspect of such shares (*Penthouse Props.* v. *1158 Fifth Ave.,* 256 App. Div. 685, 692) distinguishing them from the ordinary evidences of corporate stock ownership. While the owner does not acquire a fee in the apartment, he does possess so many of the rights and obligations peculiar to fee ownership that the status is for practical purposes indistinguishable. To name a few of these which have received statutory or decisional recognition: The shareholder has been authorized to bring summary eviction proceedings to obtain possession (*Curtis* v. *Le May,* 186 Misc. 853). The Statute of Frauds applicable to real estate

transactions applies to sales of co-operative stock (*Frank* v. *Rubin,* 59 Misc 2d 796). The stock has been treated as realty in determining the priority of judgment and tax liens (*Matter of Lacaille,* 44 Misc 2d 370). Federal and New York State income tax laws give the same privileges to co-operative share owners as they do to fee owners in many respects (see U. S. Code, tit. 26, § 121, subd. [d], par. [3]; §§ 216, 1034, and New York Tax Law, § 360, subd. 12). In addition, alienability, liability for maintenance and repairs, as well as the privileges of making interior alterations, give a popular recognition to the status of realty quite in accord with the decisional law which treats this type of property as realty.

However, even if the shares be regarded as personalty under the common law of this State, the deposit is not recoverable (*Kaplan* v. *Scheiner,* 1 A D 2d 329; *Waldman* v. *Greenberg,* 265 App. Div. 827). It is claimed that this has been superseded by statute, article 2 of the Uniform Commercial Code. That article has no application. It refers to " goods ", which by definition (§ 2–105) excludes " investment securities and things in action." If this sale is regarded as a sale of the stock, it is excluded as a sale of an investment security; if it be regarded as a sale of the proprietary lease, with the stock being only incidental, it is excluded as the lease is plainly a thing in action. The article having no application, the common-law rule continues.

The order and judgment should be affirmed.

MARKEWICH, J. P., and NUNEZ, J., concur with MURPHY, J.; STEUER, J., dissents in an opinion in which EAGER, J., concurs.

Order, Supreme Court, New York County, entered on October 6, 1970, reversed, on the law, defendant's motion denied, and plaintiff's cross motion for summary judgment granted, and the judgment of said court entered thereon on October 30, 1970 is reversed, on the law, and vacated. The matter is remanded to the trial court for a hearing with respect to damages, if any. Appellant shall recover of respondent $50 costs and disbursements of this appeal.