George Starke, J.
Motions numbered 43 and 44 are consolidated for joint disposition.
The sole issue here is whether the stock and proprietary lease in a co-operative apartment are in essence realty or personalty.
The judgment debtor, Shor, the owner of the co-operative stock and holder of the proprietary lease, had pledged the same in July, 1967 with Chase Manhattan Bank N. A. (Chase) on a loan then made and thereafter renewed, and in April, 1972, Chase entered a judgment for the balance remaining unpaid.
The co-operative stock certificate contained on its face a legend to the effect that the co-operative corporation had a lien thereon for all sums due it by the shareholder pursuant to the terms of the proprietary lease; and the proprietary lease contains a provision that the co-operative corporation has a first lien for the payment of arrears in maintenance charges, interest, costs and legal fees.
In February, 1970, First National Bank of Williamsport and now known as Fidelity National Bank of Pennsylvania (Fidelity) docketed a default judgment in a substantial amount against Shor as guarantor on a loan made by that bank to a third party. Except for the entry of the judgment, Fidelity did *163 nothing further by way of levy attachment or execution to effect or secure payment of its judgment.
The State Tax Commission (the State) docketed tax warrants against Shor in April, 1971 (and additional warrants in 1972 and 1973) for substantial sums. In December, 1971, the State served Chase with a levy and execution on and restraint of sale of the collateral held by Chase; and a like levy, execution and restraint was served on the co-operative corporation, 480 Park Avenue Corp. (480 Park) in December, 1972.
Shor was evicted from the co-operative for nonpayment of the maintenance charges and pursuant to an order of this court and with the consent of all parties concerned, Shor’s cooperative stock was sold and the proprietary lease surrendered. Whatever priority rights all of the parties had, it was agreed, would be transferred to the proceeds of the sale, mutatis mutandi, with Chase as the escrowee thereof.
Subsequently Chase, the co-operative corporation and the State entered into a stipulation wherein they agreed on the amount each is to receive from the proceeds of the sale, and this turnover proceeding was then instituted by them to effect the purport of that stipulation. Notice was given to all interested parties, all of whom, except for Fidelity, defaulted.
Fidelity contends that the entire proceeds should be paid to it as its judgment was docketed prior to the filing of the tax warrants by the State and before there were defaults under the proprietary lease. Fidelity obliquely glosses over the position of Chase as a secured creditor, but latches on to the fact that its judgment was prior to that of the Chase judgment. All this is bottomed on a contention urged by Fidelity that a judgment debtor’s co-operative apartment is "real property” within the meaning of CPLR 5203, which in substance provides that a money judgment against a judgment debtor is a lien on his real property from the time of the docketing of the judgment with the County Clerk wherein the property is located; and that under CPLR 105 (subd [r]) (definitions) it is stated that "real property” includes chattels real; and concludes Fidelity that a co-operative apartment is a chattel real. However, Fidelity overlooks that CPLR 105 is prefaced with this caveat: "unless the context requires otherwise, the definitions in this section apply to the civil practice law and rules”.
A co-operative tenant acquires stock in the co-operative corporation which is no different than stock in' any other type of corporate entity except that the ownership of the stock *164 affords the owner the right to possess a particular apartment in the co-operative venture allocated to that stock. This right to the apartment is reflected in a proprietary lease which to a large extent is no different than any other type of lease.
The co-operative corporation is the sole owner of the land and building and whatever rights a co-operative tenant has flows from his stock ownership and not from his proprietary lease which merely creates a landlord and tenant relationship between the stockholder and the co-operative corporation. In contra distinction the owner of a condominium possesses a distinct interest in real estate; he is taxed as a separate entity and title to his individual apartment is conveyed to him by a deed which affords him the right to mortgage his apartment.
The term real property is defined as to include "real estate, lands, tenements and hereditaments, corporeal and incorporeal” (General Construction Law, § 40). It is ancient learning, in construing the predecessor of the same section that "It is a virtual declaration that the words employed to define real estate, * * * would not embrace chattels real * * * terms for years fall within the definition of things personal. They go to the executors like other chattels; and. although they are denominated chattels real to distinguish them from mere movables, they are not, when speaking with legal accuracy, considered real estate. (2 Bl. Com., 386)”. (The Mayor v Mabie, 13 NY 151, 158-159.)
More recently it has been observed that "By our statutes a lease for years is called a chattel real. Gen. Const. Law, § 40; Real Prop. Law, § 33. It is not, however, real property, but is personal property. State Trust Co. v. Casino Co., 5 App. Div. 381; Matter of Ehrsam, 37 App. Div. 272; Despard v. Churchill, 53 N.Y. 192; Matter of Althause, 63 App. Div. 252, 255; affd., 168 N.Y. 670.” (Rodack v New Moon Theatre, 121 Misc 63, 70-71.)
It is quite clear that whatever ownership rights a co-operative stockholder has in a co-operative are derived from the stock and not the proprietary lease. "The fact that the plaintiffs as an incident to their stock ownership were entitled to a proprietary lease of an apartment does not convert the stock to real estate”. (Stockton v Lucas, 482 F2d 979, 985 [reviewing and applying New York State Law].)
The precise1 issue here was before the court in Silverman v Alcoa Plaza Assoc. (37 AD2d 166, 172) wherein the court held that co-operative apartment stock is not an investment secu *165 rity and this has recently been confirmed in United Housing Foundation v Forman (421 US 837) and that: "It thus appears that a proprietary lease is no different from any other type of lease. It is personal property. Co-operative apartment stock is nevertheless stock, like any other stock in a corporation owning real estate. It does not appear that the pairing of the two together does anything to create a new classification of real estate.”
Fidelity relies primarily if not exclusively on Matter of Lacaille (Feldman) (44 Misc 2d 370). However, the Appellate Division in Silverman was fully aware of Matter of Lacaille and indeed, it is cited in the dissenting opinion, but evidently the majority was more in accord with the holding in Susskind v 1136 Tenants Corp. (43 Misc 2d 588, 590) from which this quote is reiterated with emphasis:
" 'In legal theory, a corporation is an entity distinct and separate from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation. * * * In an apartment co-operative, then, the corporation is sole owner of the land and building (4 Powell, Real Property, supra, ]f 633.11). It is the shares of the corporation that are sold, and, despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease (People ex rel. McGoldrick v. Sterling, 283 App. Div. 88.) The lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement.’ ” To which there is added this observation: "In passing on the nature of the proprietary lease which a shareholder in a cooperative acquires, the court further held that such lease is personalty and not realty”. (Silverman v Alcoa Plaza Assoc., 37 AD2d 166, 172, supra.)
Hence, Fidelity’s claim is subjugated and must yield to the possessory lien of Chase, the contractual lien of the co-operative corporation and the levy and attachment of the State.
As for Fidelity’s objection to various legal fees and brokerage expenses, these amounts are relatively inconsequential in light of the fact that the total amount of Shor’s undisputed obligations to the State, Chase and the co-operative corporation exceed the amount here involved aside from the sum represented by these fees and expenses.
Accordingly, the application for an order of turnover of the escrow funds to the State, Chase and the co-operative corporation in accordance with their stipulation executed on July 24, *166 1974, is granted, as is Chase’s application to be discharged of all liability for the amount now held by it in escrow upon Chase’s compliance with the order of turnover to be settled herein.