OPINION OF THE COURT

Per Curiam.

Order entered April 16, 1980 affirmed, with $10 costs.
Plaintiff has, since July, 1978, occupied his co-operative apartment in a building owned by the defendant co-operative corporation and located on Roosevelt Island. The plaintiff, beginning in August, 1978, complained to corporate management of many problems, but especially about malfunctioning of the air-conditioning-heating unit. He alleges that the problem of lack of heat became acute with *136 the 1978 winter season; at times, it is alleged, the room temperature in his apartment “could not be raised above 40o.” A daughter was born to the plaintiff in October, 1978 and on the advice of his physician he “had to find shelter elsewhere”, although he does not state when or where or for how long. He further alleges that his purchase of supplemental electrical heating units was of no help because the building wiring could not handle the added load. Finally, he himself hired a man to repair the three units at a cost of $375.
Plaintiff brought this action in March, 1979 against the defendant co-operative corporation, alleging breach of the lease terms as well as breach of the statutory duty to supply heat. On January 31, 1980, he moved for summary judgment and asked that the matter be set down for inquest solely on the extent of damages; plaintiff sought damages in the amount of $5,000, which included the cost of repairing the heating units and “pain and suffering”, etc.
On March 19, 1980, the defendant cross-moved for summary judgment. An affidavit submitted by defendant’s managing agent in conjunction with that cross motion, details the steps taken by management to cope with the problem. A contractor was sent who determined that the problem resulted from malfunctioning fan coils in the units. Parts were thereafter ordered; a resurvey in February, 1979 indicated that the units were then functioning properly. The court below denied both plaintiff’s and defendant’s motions for summary judgment noting that fact issues required a trial.
Both in the court below and on appeal, the plaintiff argues that the deprivation of heat constituted a violation of the implied warranty of habitability (Real Property Law, § 235-b) and required a granting of summary judgment.
While there are indeed fact issues that require a trial, this court cannot ignore the issue of whether or not the statute (Real Property Law, § 235-b) applies to co-operative apartments. In fact, by denying summary judgmént to the defendant corporation, the court below implicitly recog *137 nized the applicability of the statute to proprietary tenancies since that was the major item of contention of each party. We have been unable to locate any appellate authority specifically accepting or rejecting the application of the warranty of habitability to the relationship of co-operative tenants and their co-operative landlords.
Numerous decisions have established that a co-operative tenant’s acquisition of stock in a co-operative corporation is essentially the same as his acquisition of stock in any other corporate entity except that it affords him, in addition, a right to reside in a particular apartment allocated to that stock (Matter of State Tax Comm, v Shor, 84 Misc 2d 161, affd 53 AD2d 814, affd 43 NY2d 151). Furthermore, it has been said that the proprietary lease given to the tenant is not different from any other type of lease and it creates a landlord-tenant relationship between the stockholder and the co-operative corporation (Matter of State Tax Comm, v Shor, supra; see, also, Hauptman v 222 East 80th St. Corp., 100 Misc 2d 153; Carden Hall v George, 56 Misc 2d 865; Rasch, 1 New York Landlord & Tenant, Summary Proceedings [2d ed], § 82).
On the other hand, the relationship created has also been called sui generis, i.e., peculiar, unique, different (Matter of State Tax Comm, v Shor, 43 NY2d 151, 154, supra). As Chief Judge Breitel, writing for a unanimous Court of Appeals, observed (p 156): “One has, therefore, a mixed concept and terminology, superficially resembling, the traditional rental apartment lease, except, for example, that the lessee pays monthly maintenance charges and is subject to assessments instead of rent. For some purposes it is a lease; for others it is a compact between co-operative corporation and co-operative tenant.” (See, also, dissenting opn by Steuer, J., in Silverman v Alcoa Plaza Assoc., 37 AD2d 166 — status of co-operator or proprietary lessee is for practical purposes indistinguishable from an owner of the fee; and compare this language in Penthouse Props, v 1158 Fifth Ave., 256 App Div 685, 691, “in a very real sense the tenant stockholders enter into a relation not unlike a partnership, though expressed in corporate form.”)
In Jimerson Housing Co. v Butler (97 Misc 2d 563, 565), the court refused a co-operative corporation the right to *138 bring summary proceedings against a nonpaying proprietary lessee, noting that “[t]he cooperative ownership plan is sui generis”, and denying that the resulting relationship was truly that of landlord and tenant. That determination was, however, overruled by the Appellate Term, Second Department, which noted (102 Misc 2d 423, 424): “the relationship between the petitioner, a co-operative, and respondent, its stockholder, is that of landlord and tenant to the extent that petitioner may maintain a summary proceeding against respondent”.
Does it follow that the warranty of habitability applies to proprietary leases? Subdivision 1 of section 235-b of the Real Property Law provides: “In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety.”
In 158th St. Riverside Drive Co. v Launay (NYLJ, April 6, 1976, p 9, col 2), the court denied the relevance of the statute to proprietary tenancies noting: “While section 235 (b) refers to ‘every written or oral lease * * * for residential premises’ * * * it is clear that the conventional landlord-tenant relationship is contemplated. * * * Respondent’s remedy lies elsewhere.” But in Hauptman v 222 East 80th St. Corp. (supra, p 155), the Civil Court, New York County, held as to such a tenancy: “There is nothing here which indicates an intention by the Legislature to exempt co-operatives from the ambit of the warranty.” (See, also, Laight Co-op. Corp. v Kenny, 105 Misc 2d 1001; Lehner & Sweet, Conversions of Residential Cooperatives, Lofts, NYU, Dec. 24, 1980, p 1, col 2, p 6, col 2, which would apply section 235-b of the Real Property Law to co-operative apartments.)
In approving section 235-b of the Real Property Law (L 1975, ch 597; NY Legis Ann, 1975, p 437), Governor Carey noted that the section was intended to remedy tenant *139 inequities “founded upon legal principles that evolved during the middle ages.” As to this legislation, the Governor further stated, “By one large step this bill moves the law of landlord and tenant into the twentieth century.” (NY Legis Ann, 1975, p 438.) Whether the ameliorative legislation was intended to apply to the proprietary lessor-lessee situation — whose origins are of much more modern vintage — is, however, not expressly stated in the statute. Nevertheless, “It is not unprecedented in our jurisprudence for language shaped by a particular purpose to be found useful in responding to other problems” (Curry v New York City Housing Auth., 77 AD2d 534, 536), and as a matter of sound policy the proprietary tenant, subject as he is to being ousted for nonpayment of charges and probably other delinquencies, should enjoy whatever benefits flow from the warranty of habitability. It is not enough to say as the court did in 158th St. Riverside Drive Co. v Launay (supra): “Respondent’s remedy lies elsewhere.” A proprietary lessee is entitled to the statutory protection as well as the noninvesting, ordinary tenant. While there is thus created the anomalous situation that one who is essentially an owner (by virtue of his purchase of shares) is in a sense suing himself, the situation is not vastly different from any stockholder who has occasion to sue the corporation of which he is a pro rata owner by purchase of stock. No one would deny the owner of shares of stock in General Motors the right to sue that corporation if he purchased a defective vehicle. While this may indeed be pounding square pegs in round holes, the result should be a salutary one, viz., an increased attention on the part of co-operative boards of directors to the well-being of the members of the co-operative.
Nevertheless, summary judgment was properly denied to the plaintiff. The landlord is no absolute insurer of services which do not affect habitability nor is it a guarantor of “every amenity customarily rendered in the landlord-tenant relationship” (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, 327). While it is not disputable that health and safety are adversely affected by insufficient heat, not every such deprivation will constitute a breach of the warranty. “Each case must, of course, turn on its own *140 peculiar facts” (supra, p 327). Even the breach of an applicable housing code violation is not decisive. “In some instances, it may be that the code violation is de minimis or has no impact upon habitability” (supra, p 328). A decision as to a breach of the warranty will turn on the extensiveness of the breach, the manner in which it impacted on the health of the tenant and even the measures taken by the landlord to alleviate the violation (supra, p 328). The test is whether or not the defects (supra, p 328) “deprive[d] the tenant of those essential functions which a residence is expected to provide” as viewed by the eyes of a reasonable person. The question is rarely capable of resolution by papers alone and is not in this case. We have in N Town Roosevelt Assoc, v Muller (NYLJ, Oct. 27, 1980, p 6, col 4) set forth the law controlling recoverable damages if a breach of the warranty of habitability be established.