OPINION OF THE COURT
John A. Milano, J.
issue:
This court is asked to decide whether section D26-10.10 of the Administrative Code of the City of New York (statutory waiver of no pet covenants law) is applicable to residential cooperatives.
proceeding:
The owner, Linden Hill No. 1 Cooperative Corporation, brings this holdover proceeding to remove the respondent tenant Frances Kleiner from the subject premises (apartment 1H represented by shares of stock in premises 25-15 Union St., Flushing, Borough of Queens, consisting of 4Vfe rooms) for violating the terms of her proprietary lease in that the said respondent failed to remove from her apartment an animal, to wit, a dog, after having received notice from the owner that harboring a dog in said apartment was in violation of the occupancy agreement and the rules and regulations set forth of the board of directors.
*1002 facts:
Petitioner is the corporate owner of a multiple dwelling which has been converted to a cooperative. Section D2610.10 requires that any language in a multiple dwelling lease prohibiting household pets be deemed waived if the landlord does not commence an action or summary proceeding to enforce the lease within three months of knowledge of same, provided the pet is not a nuisance. Petitioner admits knowledge of the harboring of the dog for more than three months prior to the commencement of this proceeding and has pleaded its apartment ■ house as a multiple dwelling. Respondent acknowledges that there is language in the proprietary lease prohibiting pets. Petitioner has not alleged nuisance.
ADMINISTRATIVE CODE
Section D26-10.10 provides as follows:
“Rights and responsibilities of owners and tenants in relation to pets. — a. Legislative Declaration. The Council hereby finds that the enforcement of covenants contained in multiple dwelling leases which prohibit the harboring of household pets has led to widespread abuses by building owners or their agents, who knowing that a tenant has a pet for an extended period of time, seek to evict the tenant and/or his pet often for reasons unrelated to the creation of a nuisance. Because household pets are kept for reasons of safety and companionship under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety and welfare of tenants who harbor pets under the circumstances provided herein, it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this city.
“b. Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors or has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the City of New York or any other applicable law, and the owner or his agent has *1003 knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived.
“c. It shall be unlawful for an owner or his agent, by express terms or otherwise, to restrict a tenant’s rights as provided in this section. Any such restriction shall be unenforceable and deemed void as against public policy.
“d. The waiver provision of this section shall not apply where the harboring of a household pet causes damage to the subject premises, creates a nuisance or interferes substantially with the health, safety or welfare of other tenants or occupants of the same or adjacent building or structure.
“e. The New York City housing authority shall be exempt from the provisions of this section.”
CONTENTIONS OF PETITIONER
The petitioner argues that residential cooperatives and cooperative shareholders were not meant to be included within the coverage of section D26-10.10. Further that the language of the local law does not mention cooperative corporations or cooperative shareholders and in fact confines itself to “covenants contained in multiple dwelling leases.” That the respondent is not only a member of the board of directors of the cooperative, but she is a shareholder as well and possesses a proprietary lease; that this type of ownership, coupled with perpetual leasehold, is radically different from the simple “multiple dwelling leases” referred to in the City Council resolution; that if a cooperative tenant does not like the rules of the cooperative, he or she may change them through democratic means provided for in the by-laws and in the regular meetings of the cooperative; that paragraph a of section D26-10.10 discusses the housing emergency, the need to protect pet owners from “retaliatory eviction”, as well as other common landlord abuses; that this rationale is clearly applicable to the conventional landlord-tenant scenario, but not to the cooperative environment; that a conventional landlord operating under either rent controls or rent stabilization *1004 has every financial incentive to evict a tenant but that a cooperative corporation does not have such profit incentives.
CONTENTIONS OF RESPONDENT
The respondent submits that the City Council in enacting section D26-10.10 clearly intended the law to apply to multiple dwelling cooperatives; the co-op tenant is in the same position with respect to landlord-tenant law as any other tenant; that had the Council wanted to exclude co-op tenants from the law’s protection it would have done so expressly as it did with respect to the New York City Housing Authority, and as it did in the Rent Stabilization Law; that the underlying rationale for the new law is the protection of tenants from hardship during a housing emergency. Both co-op tenants and traditional tenants are in need of such protection.
NATURE OF THE CO-OP LEASE
Courts have frequently been called upon to determine the precise nature of a co-op lease and tenancy with respect to matters of landlord-tenant law in general. It is now well settled that a proprietary lease is no different from any other type of lease (1 Rasch, NY Landlord & Tenant, Summary Proceedings, § 82, March, 1984 Cum Supp, p 15, citing Silverman v Alcoa Plaza Assoc., 37 AD2d 166; Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept]).
The co-op tenant and holder of a proprietary lease “is in much the position as any other tenant under usual leasing arrangements.” (19 NY Jur 2d, Condominiums and Cooperative Apartments, § 51, p 556; People ex rel. McGoldrick v Sterling, 283 App Div 88.) “The reason is undoubtedly the wish to retain for the corporation the facile and summary remedies that are available to the ordinary landlord, in the event the lessee defaults in his obligations.” (Supra, at p 93.)
It is therefore apparent that the relationship between a shareholder-tenant and the cooperative is akin to that of landlord and tenant. (Hauptman v 222 East 80th St. Corp., 100 Misc 2d 153; Jimerson Housing Co. v Butler, 102 Misc 2d 423 [App Term, 2d Dept], revg 97 Misc 2d 563; Suarez v *1005 Rivercross Tenants’ Corp., supra; Lacaille v Feldman, 44 Misc 2d 370; Matter of Danforth v McGoldrick, 201 Misc 480; Susskind v 1136 Tenants Corp., 43 Misc 2d 588; Glen Oaks Vil. Owners v Mauro, 117 Misc 2d 151.) And in evaluating the nature of “co-operative owner's interest” and the indicia of that interest and ownership, shares of stock and proprietary leases in regard to cooperatives are deemed personal property. (Matter of State Tax Comm, v Shor, 84 Misc 2d 161, affd 53 AD2d 814, affd 43 NY2d 151.) In Laight Coop. Corp. v Kenny (105 Misc 2d 1001, 1004), a case cited with favor in Suarez v Rivercross Tenants’ Corp. (supra) by the Appellate Term, First Department, the court stated: “To distinguish co-operative housing corporations from rental housing entities for one purpose [there the warranty of habitability] and treat them identically for others (summary proceedings) may create the anomalous situation where a tenant in a co-operative is subject to all of the liabilities but none of the rights of a tenant in a rental building.” In sum, with respect to the nature of the proprietary lease itself, the courts simply do not distinguish for purposes of landlord-tenant law, between the leases held by co-op tenants and those held by the more traditional tenants. The same holds true for the status of the tenancy.
STATUTORY EXEMPTIONS AND EXCLUSIONS
Petitioner argues that because the law does not expressly list co-ops as coming within its scope, co-ops may not then be included when construing the general “multiple dwelling” language. The pet law was enacted to protect tenants in “multiple dwelling[s]” (D26-10.10, subd b) and tenants with “covenants * * * in multiple dwelling leases” (D26-10.10, subd a); and subdivision e of the law expressly exempts the New York City Housing Authority, a landlord of one type of multiple dwelling. But even without the express exemption for the Housing Authority, traditional statutory construction requires that co-ops be held covered. As set forth in section 74 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1): “[W]hen the Legislature by the use of general language has given an act a general application, the failure to specify particular cases which it shall cover does not warrant the court in inferring that the *1006 Legislature intended their exclusion. On the contrary, in such cases, if the Legislature did not intend the act to apply to such cases, ‘it would have been easy to have said so.’” (Emphasis supplied.) And as set forth elsewhere in McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1, § 240): “[W]here a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned.”
APPLICABILITY OF PET LAW TO CO-OP TENANTS
Subdivision a of the pet law recognizes the “existence of a continuing housing emergency.” In the matter at bar, respondent is affected by the city’s housing emergency as much as is a traditional tenant. If she is evicted, the depressed apartment turnover rate and high rents will not discriminate in her favor. The subdivision also recognizes that there have been too many attempts to evict the tenant and/or his pet often for reasons unrelated to the creation of a nuisance. Further, the subdivision a says that the law was meant “to safeguard the health, safety and welfare of tenants who harbor pets”. Certainly, no rational basis exists to differentiate amongst co-op tenants and traditional tenants with respect to these needs. The petitioner further argues that co-ops were not meant to be bound by the pet law, because co-ops, as opposed to traditional landlords, lack a profit-making motive. The Appellate Term, First Department, disagreed with such a claim with respect to the warranty of habitability and another nonprofit group. (City of New York v Rodriguez, 117 Misc 2d 986.) Ruling that the city was bound by section 235-b of the Real Property Law, the court wrote (p 990): “Nor is the claim by the city that it is not in the business of making a profit from these premises persuasive. Section 235-b affords no exemption to not-for-profit entities, and indeed this court only recently held that co-operative corporations, which clearly do not operate for profit, are obligated by the warranty of habitability (Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135; Note 55 St. John’s L Rev 800)”.
And the court is not persuaded by argument of petitioner that respondent is more autonomous than traditional tenants because she has the right to vote to change the co-op’s *1007 rules. No tenant should have the burden of soliciting permission from 50% of his or her neighbors in order to keep a well-behaved pet, after the cooperative landlord’s time to evict has passed. In Laight Coop. Corp. v Kenny (supra, at p 1003) the court stated: “An examination of the relationship in a housing co-operative reveals that a minority shareholder is often as powerless against the board of directors as any tenant vis-á-vis a landlord. In such a situation a tenant co-operator cannot even obtain the advantages of a tenant organization since the other tenants are, in effect, the landlord.” And further, the respondent’s membership on the board of directors of the petitioner cooperative (wherein she may be removed by future vote of the shareholders) does not in any way lessen her rights or deny her legal remedies under the provisions of the pet law. It is obvious to this court that all tenants including cooperative tenants are in need of the protections of the said pet law. This court, on the basis of the above, holds and finds that section D26-10.10 of the Administrative Code of the City of New York (statutory waiver of no pet covenants law) is applicable to residential cooperatives.
PROSPECTIVE APPLICATION OF THE WAIVER PERIOD
On June 8,1984, the Appellate Term, for the Second and Eleventh Judicial Districts, in the case of Megalopolis Prop. Assoc. v Buvron (revg 121 Misc 2d 662), held that the pets-in-housing law could apply to leases entered into prior to October 26, 1983 (effective date of the statute) but that the waiver period could only be computed from the said effective date and not retroactively.
Accordingly and in conformity with the appellate ruling, this court must decide whether the three-month waiver period has expired or whether the petitioner’s right to bring this action is still “alive”? Let us examine the facts: The said pet law was signed into law and effective October 26, 1983. The cut-off period would then be January 26, 1984. On December 23,1983, the landlord served a 30-day notice on the respondent tenant terminating the tenancy as of January 31,1984, “by reason of the fact that you have failed to remove from your apartment the dog after receiving notice from the owner that having a dog in your apartment is in violation of the Occupancy Agreement and *1008 Rules and Regulations set forth by the Board of Directors.” The dog obviously was -being harbored by the said respondent prior to December 23,1983 and with the knowledge of the landlord petitioner. But let us apply the December 23 date as the date of knowledge to the facts at hand.
Section D26-10.10 requires that any language in a multiple dwelling lease prohibiting household pets, be deemed waived if the landlord does not commence an action or summary proceeding to enforce the lease within three months of knowledge, provided the pet is not a nuisance. Now to the crux of the issue; if “commencement” of an action or summary proceeding is interpreted and defined by this court to be the date of the service of the “notice” (30-day notice served on Dec. 23) then the landlord may still maintain this action because the notice was served before January 26,1984. But if the court defines that “commencement” means the date when the notice of petition and petition was served on the tenant respondent (date of service May 12,1984) then the time period for the maintenance of this proceeding would have expired (cut-off date would be March 23, 1984) and the petitioner would be barred from proceeding herein.
STATUTORY CONSTRUCTION
In the case of Lobatto v Ehrlich (Civ Ct, NY County, April, 1984, L&T 31410/84) the court stated: “It is now well-settled law that an ‘action is commenced and jurisdiction acquired by service of a summons. A special proceeding is commenced and jurisdiction acquired by service of a notice of petition.’ CPLR 304. This is a fundamental procedural rule. Real Property Actions and Proceedings Law, Article Seven, which governs summary holdover proceedings, such as this one, is in accord. Section 731.1 states ‘The special proceedings prescribed by this article shall be commenced by service of petition and a notice of petition.’ A notice to cure is not a notice of petition. It alerts a tenant that litigation may ensue if the violation is not cured, but the landlord is perfectly free to delay indefinitely the initiation of a legal suit or indeed, choose not to bring one on at all. Only when the petitioner submits his grievance to the jurisdiction of the court will the law recognize that *1009 an action has been commenced.” (And see Superior Condo v Stile, Civ Ct, NY County, June 4, 1984, index No. 34899/84.)
CONCLUSION
Since the rights, privileges and protections of section D26-10.10 is applicable to co-op tenants and since the proceeding was commenced on May 12, 1984, subsequent to the effective date of the pet law statute, and more than three months after landlord’s knowledge of the dog’s presence on the premises, the provision in the respondent’s lease prohibiting pets must be deemed waived.
Accordingly, and for all the reasons set forth above, the petition is dismissed, with prejudice.