**Lena SMITH, Appellant,**

v.

**Eddie A. BAKER, Appellee.**

Court of Appeals of Kentucky.

May 16, 1986.

Discretionary Review Denied
by Supreme Court
Oct. 7, 1986.

Paul R. Collins, Hollon, Hollon & Hollon, Hazard, for appellant.

Charles Allen, Steven G. Barker, Hazard, for appellee.

Before HAYES, Chief Judge, and HOWERTON and McDONALD, JJ.

HOWERTON, Judge.

Lena Smith appeals from a summary judgment of the Perry Circuit Court dis-

missing her claim against Baker. Claude Smith, Lena's deceased husband, and Eddie Baker had incorporated a business under the name of B & S Body Shop, Inc. Each had purchased a $100,000 life insurance policy, naming the other as the insured. The parties had also purchased an additional reciprocal life insurance policy in the face amount of $55,000. Mrs. Smith sought to collect the proceeds on the basis of an alleged buy-sell agreement between the parties whereby the insurance proceeds would be used to purchase the one-half interest in the business from the other upon the death of either.

The trial court concluded that KRS 355.-8–319 was applicable to buy-sell agreements and that the statute required such agreements to be in writing. As there was no writing sufficient to meet the requirements of KRS 355.8–319, the alleged buy-sell agreement was unenforceable. The court further concluded that Mrs. Smith was not entitled to restitution on the basis of unjust enrichment or any such equitable theory, citing *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, Ky.App., 586 S.W.2d 40 (1979). We agree with each of these rulings and affirm.

CR 56 authorizes a summary judgment when there is no genuine issue of any material fact and when the moving party is entitled to judgment as a matter of law. There are many disputed facts in this case concerning why the policies were purchased and whether the parties intended to enter into a buy-sell agreement, but the law requires that such agreements be in writing to be enforced. Therefore, as a matter of law we determine that Baker was entitled to a summary judgment dismissing Lena Smith's claim.

Mrs. Smith first argues that KRS 355.8–319 does not apply to this buy-sell agreement, because the stock in B & S Body Shop does not fall within the definition of a "security" in KRS 355.8–102. KRS 355.8–319 is written as follows:

(1) A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; ....

Subsections (b), (c), and (d) provide various exceptions to the requirement of a writing, but none of the exceptions are applicable in this case. The term "security," as is defined in KRS 355.8–102, is as follows:

(a) A "security" is an instrument which:

1. Is issued in bearer or registered form; and

2. Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

3. Is either one of a class or series or by its terms is divisible into a class or series of instruments; and

4. Evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

Mrs. Smith argues that the B & S Body Shop stock was never issued in any form, bearer or registered, and it was not the type of stock which would be commonly dealt in upon security exchanges or markets. She also alleges that closely-held corporate stock has been found to be outside the definition of a "security" in other jurisdictions. She cites *Zamore v. Whitten,* 395 A.2d 435 (Me.1979); *Rhode Island Hospital v. Collins,* 117 R.I. 535, 368 A.2d 1225 (1977); and *Silverman v. Alcoa Plaza Associates,* 37 A.D.2d 166, 323 N.Y.S.2d 39 (1971).

*Silverman* involved stock in a cooperative apartment building. The stock in *Zamore* and *Rhode Island Hospital* involved closely-held, family-type corporate businesses. The Maine court concluded in *Zamore* that the stock was "not of the type 'commonly dealt in upon securities exchanges or markets,' nor is it commonly recognized in any area of securities ex-

changes or markets as a medium for investment." Although cases from other jurisdictions are often persuasive and influential, we disagree with the holdings in each of those cases and must at least conclude that the stock in this case falls within the purview of KRS 355.8–319.

We find no significance in the fact that the stock in B & S Body Shop, Inc, had never been issued. It would have to be issued before it could be transferred from the person entitled to the stock to a new buyer. Furthermore, and most importantly, we conclude that corporate stock meets all four points in the definition of "security" in KRS 355.8–102. It is registered, divisible into classes, and evidences a share or interest in property. The only point in the definition which causes any concern is subsection (2) which reads, "is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment."

A corporate stock certificate is clearly evidence of an investment. The value may be essentially zero, but stock certificates are securities in the sense that they represent an investment. Whether a particular corporate stock, certificate of deposit, or corporate bond is commonly traded through a securities exchange or market will depend on many factors. Nevertheless, stock certificates, bonds, C.D.'s and other such evidences of investments are commonly traded through "securities exchanges or markets," and they are commonly known as "securities." It may be, however, that in a closely-held corporation, there are rare instances of any trading, and none may occur on an open market. Trading may occur directly and not through a stock broker or exchange. However, we decline to engage in drawing a line on whether a particular stock is commonly dealt in upon securities exchanges, because we would not know when if ever to draw such a line. People normally think of stock certificates as "securities," and we do not wish to confuse the issue. Is a stock certificate in the XYZ Corporation any less of a "security" than a share of stock in General Motors? We think not. The stock of XYZ certainly could be traded by a broker.

Although this court, in *Renfroe v. Ladd*, Ky.App., 701 S.W.2d 148 (1986), did not decide the specific issue involved in this case, the statute of frauds (KRS 355.8–319) was held to be applicable in a similar situation. In *Renfroe*, an alleged contract for the sale of 50 percent of the stock from the sole owner of the corporation was unenforceable because of KRS 355.8–319, and the court held that the theory of equitable estoppel may not be applied to avoid the writing requirements of the statute. The *Renfroe* case is also somewhat dispositive of the second issue raised by Mrs. Smith.

She secondly argues that the trial court erroneously concluded that estoppel was unavailable to her as a defense to the application of KRS 355.8–319. In addition to the ruling in *Renfroe, supra,* we also conclude that *C & G Campbell, supra,* relied upon by the trial court, is applicable in this case. In *C & G Campbell,* the court noted that equitable principles have sometimes been employed to relieve the harsh effects of the statute of frauds, but the court held that the Uniform Commercial Code "contains its own statutory method of alleviation of hardships caused by § 2–201(1)." *C & G Campbell, supra,* at p. 41. While we are not dealing with Article 2 of the U.C.C., KRS 355.8–319 likewise contains its own statutory alleviations of hardships as found in subsections (b), (c), and (d). However, as we have already noted, none of these exceptions are applicable in this case.

The judgment of the Perry Circuit Court is affirmed.

All concur.