OPINION OF THE COURT

Per Curiam.

Final judgment entered July 21, 1981 is reversed, without costs; tenant’s affirmative defense of breach of warranty of habitability (Real Property Law, § 235-b) is reinstated and a trial is ordered.
Landlord, the City of New York, initiated this nonpayment proceeding to recover rental arrears of $975, for the months of February through May, 1981. The petition was subsequently amended to include additional rental arrears, bringing the aggregate amount of rent sought to $1,545. Tenant has admittedly withheld that amount of rent.
As an affirmative defense to this proceeding tenant asserted a breach by landlord of the warranty of habitability. In that regard it is alleged in tenant’s answer that the *987 ceiling in the bathroom leaks; the plumbing is defective; the toilet is broken; the bathroom tiles are loose; there are cracks in the kitchen walls; the refrigerator door doesn’t close; the apartment is infested with roaches; and the wiring in the second bedroom is defective. While these allegations are sufficient to state an affirmative defense of breach of the warranty of habitability (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, cert den 444 US 992; Goldner v Doknovitch, 88 Misc 2d 88), the court below concluded that such an affirmative defense of breach of the warranty may not be asserted against the City of New York qua landlord, and thus summarily awarded final judgment in landlord’s favor.
More than a decade ago, even before the warranty of habitability was embodied in section 235-b of the Real Property Law (L 1975, ch 597, eff Aug. 1, 1975; amd L 1976, ch 837, eff July 26, 1976), courts of this jurisdiction recognized that a landlord’s breach of the warranty of habitability gives rise to an actionable claim which a tenant may assert as an independent cause of action or as an affirmative defense to a landlord’s nonpayment proceeding (Amanuensis, Ltd. v Brown, 65 Misc 2d 15; Jackson v Rivera, 65 Misc 2d 468). During the decade since the warranty’s first application, and until the instant case, it appears that no court has specifically considered whether the City of New York, as an owner of residential housing stock, is subject to the warranty of habitability. Neither tenant nor landlord in this appeal refers to any such precedent, and we ourselves find none.
The court below, in holding that the warranty of habitability may not be asserted against the city, does so “[p]ursuant to the reasoning set forth in Salzman v. Brown, 67 Misc 2d 101 [Civ. Ct., Kings County, 1971].” In the Salzman case an administrator appointed pursuant to RPAPL article 7-A initiated a summary nonpayment proceeding against a tenant who was a recipient of public assistance. That tenant, through the Department of Social Services, which appeared on tenant’s behalf as amicus curiae, interposed as a defense to landlord’s nonpayment proceeding section 143-b of the Social Services Law, commonly referred to as the Spiegel Law. The Spiegel Law *988 provides that in any action or summary proceeding against a welfare recipient for nonpayment of rent, it shall be a valid defense to show existing violations in the building, which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for nonpayment (Social Services Law, § 143-b, subd 5, par [a]).
The Salzman court held that in a nonpayment proceeding maintained by an article 7-A administrator a defense under the Spiegel Law is unavailing because it would vitiate the very purpose of the law which permitted the court appointment of the administrator in order to remedy unsafe or unhealthy conditions. More specifically the Salzman court observed (supra, pp 103-104): “it is inconceivable that the Legislature intended that the Spiegel Law be interposed as a defense against an administrator appointed pursuant to article 7-A of the Real Property Actions and Proceedings Law. The Spiegel Law, enacted in 1962, was aimed at landlords who have been exploiting tenants who are welfare recipients by failing to make necessary repairs and neglecting to provide necessary services (See L. 1962, ch. 997, § 1). In providing for an abatement of the rent of welfare tenants while hazardous violations exist, the thrust was against landlords who have monetary interests and who seek to realize profits by neglecting their buildings and failing to provide the tenants with services and repairs * * * Certainly an article 7-A administrator has no pecuniary interest in the rents, and the withholding of rents would be no inducement to him, other than to resign his appointment. If he were to be deprived of the rents he could make no repairs or improvements in the premises, and the whole purpose of article 7-A would be defeated in contravention of the legislative intent which brought it into being.”
We are not called upon here to review the efficacy of Salzman v Brown (67 Misc 2d 101, supra), and although certain of the attributes which the Salzman court imputes to article 7-A administrators may also be imputed to the city, it does not necessarily follow that the Legislature intended to exempt the city, in its capacity as residential landlord, from the scope of section 235-b of the Real Property Law. Section 235-b of the Real Property Law provides, *989 in part, that “[i]n every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented * * * are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety.” The language of the statute refers to “landlord” in the generic sense and thus does not exempt any class or category of landlord from its application.
The Legislature has on occasion exempted city-owned property from the operation of remedial tenant legislation. For example, rents in city-owned properties are not subject to the rent levels imposed by the New York City Rent Control Law or the rent stabilization guidelines (Administrative Code of City of New York, § Y51-3.0, subd e, par 2, cl [f]; Code of Rent Stabilization Association of New York City, Inc., § 2, subd [g], par [4]). In this context we deem the absence from section 235-b of the Real Property Law of an exemption for city-owned properties significant.
The city, in its brief submitted to this court, states that it has taken title to the premises in question pursuant to internal revenue tax foreclosure proceedings, after the prior owner defaulted in the payment of real estate taxes. Foreclosure may also be predicated upon a lien against premises by the city for moneys expended by the city pursuant to the emergency repair program, whereby the city has, upon application of tenants, supplied fuel and repaired conditions in a residential building, which are immediately dangerous to life, health or safety of the tenants in the building. The city suggests that in either case, it generally takes title to buildings which have been sorely neglected or totally abandoned.
Thus, far from seeking to make a profit from revenues produced by such buildings, the city indicates that those revenues are used to pay outstanding liens and to rehabilitate and maintain the premises to a point where the city may divest itself of the operation and ownership of the premises. To that extent the city argues that it stands in the same position as an article 7-A administrator and that, *990 in order to succeed in the restoration of these premises, it requires that all rents be paid, and that the tenants be foreclosed — albeit unfortunately, in view of the condition of the premises — from securing rent abatements pursuant to section 235-b of the Real Property Law.
While we are sympathetic with the city’s plight in having to assume responsibility for properties such as the one here at issue, we perceive no logic in requiring tenants of city-owned property to pay rent for services not received while recognizing the right of tenants of privately owned property to abate their rents under identical circumstances. Nor is the claim by the city that it is not in the business of making a profit from these premises persuasive. Section 235-b affords- no exemption to not-for-profit entities, and indeed this court only recently held that cooperative corporations, which clearly do not operate for profit, are obligated by the warranty of habitability (Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135; Note, 55 St. John’s L Rev 800).
Accordingly we conclude that tenants of city-owned residential properties are entitled to the protection afforded all other tenants by section 235-b of the Real Property Law.
Dudley, P. J., Hughes and Sullivan, JJ., concur.