*221 OPINION OF THE COURT
Philip S. Straniere, J.
Plaintiffs, five members of the Aponte family, commenced this action in Supreme Court, Richmond County against the defendant, New York City Housing Authority (NYCHA), alleging that owing to the negligence of the defendant, plaintiffs’ apartment at the Mariner’s Harbor Houses, Staten Island, New York has never been eradicated of a bedbug infestation condition. Plaintiffs assert that the condition began in 2012 and continues to date. Defendant NYCHA has admitted the apartment has had bedbugs on and off over a period of time, but denies any liability. A jury trial commenced on September 15, 2016 and continued to verdict in favor of plaintiffs on September 23, 2016. Both sides are represented by counsel.
At the close of defendant’s case, plaintiffs made a motion for a directed verdict on the issue of the liability of the defendant, NYCHA, for failing to eradicate bedbugs in plaintiffs’ apartment, unit 1C at 179 Brabant Street, Staten Island, New York.
The New York City Housing Authority was created pursuant to Public Housing Law article 13, title 1. Public Housing Law § 2 sets forth the “[p]olicy of state and purpose of chapter.” It states that one of the reasons for the establishment of public housing is the “providing of adequate, safe and sanitary low rent housing accommodations” (id.).
In order to achieve this purpose, there have been enacted several statutes that are relevant to this proceeding. They provide certain standards in regard to housing that is expected of all landlords in New York State or City.
The first, Real Property Law § 235-b, creates a warranty of habitability in regard to landlord-tenant relationships. It provides:
“Warranty of habitability
“1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and . . . the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused *222 by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties” (id.).
Case law has established that NYCHA is subject to the warranty of habitability of Real Property Law § 235-b (City of New York v Rodriguez, 117 Misc 2d 986 [1983]). Plaintiffs allege that defendant NYCHA has breached this warranty of habitability by failing to eradicate the bedbug condition in apartment 1C. Defendant alleges that there was no breach of the warranty of habitability either because it took all reasonable steps to eradicate the bedbug infestation or that the condition was caused by one or more of the plaintiffs.
The presence of bedbugs in an apartment has been held to constitute a breach of the warranty of habitability (Bender v Green, 24 Misc 3d 174 [2009]). Although standing alone, a violation of Real Property Law § 235-b may not give rise to a damage claim for personal injuries resulting from the infestation (Joyner v Durant, 277 AD2d 1014 [2000]), there are other statutes that do create such a cause of action.
The second statute, Multiple Dwelling Law § 80, provides:
“Cleanliness
“1. The owner shall keep all and every part of a multiple dwelling, the lot on which it is situated, and the roofs, yards, courts, passages, areas or alleys appurtenant thereto, clean and free from vermin, dirt, filth, garbage or other thing or matter dangerous to life or health. . . .
“5. Any tenant shall be punishable as provided in section three hundred four for the existence of conditions in violation of the provisions of this chapter within his apartment to the extent that such conditions are caused by him, by members of his family or by his guests, and are under his control; but this provision shall not be construed to relieve the owner of any liability or duty under this section, except where a violation is caused and continued solely by the tenant [and] those under his control.”
Plaintiffs allege that NYCHA has violated this statute by failing to keep every part of the multiple dwelling free from vermin, in this case bedbugs. Only in cases where the problem is caused solely by the tenant is the landlord relieved of its obligations under this statute. Defendant NYCHA alleges the *223 condition in the apartment was caused by the plaintiffs. There is no record of the plaintiffs having been charged with a violation of this section by NYCHA or that NYCHA took any steps to punish the plaintiffs for violating Multiple Dwelling Law § 80 by invoking the procedures of Multiple Dwelling Law § 304. Therefore, it must be concluded that the conditions observed by NYCHA employees when they visited plaintiffs’ apartment to treat bedbugs were not of the nature to or did not reach the level to constitute a violation under section 304. There is no indication that NYCHA ever undertook to terminate plaintiffs’ tenancy for violating the lease terms or for creating a nuisance.
There is evidence from witnesses from both parties that establish that the premises, 179 Brabant Street, have not been kept clean and free of vermin as required by this statute and responsibility for cleanliness rests with NYCHA. The case law has consistently held that Administrative Code provisions imposing a nondelegable duty on a landlord to maintain the premises in a safe condition are valid and consistent with the obligations created by this statute (Weiss v City of New York, 16 AD3d 680 [2005]).
The third statute is part of the Housing Maintenance Code of the Administrative Code of the City of New York and it deals specifically with eradication of rodents and insects. Article 4 governs extermination and rodent eradication.
Section 27-2017 of the Administrative Code sets forth certain definitions to apply to analyzing the alleged occurrences. It provides:
“Definitions.
“When used in this article:
“(a) Eradication means the elimination of rodents or insects and other pests from any premises through the use of traps, poisons, fumigation or any other method of extermination.
“(b) Insects and other pests include the members of class insecta, including . . . bedbugs, . . .
“(c) Harborage means any condition which provides shelter or protection for rodents or insects and other pests.”
Administrative Code § 27-2018 provides:
“Rodent and insect eradication; mandatory extermination.
*224 “a. The owner or occupant in control of a dwelling shall keep the premises free from rodents, and from infestations of insects and other pests, and from any condition conducive to rodent or insect and other pest life.
“b. When any premises are subject to infestation by rodents or insects and other pests, the owner or occupant in control shall apply continuous eradication measures.
“c. When the department makes the determination that any premises are infested by rodents, insects or other pests, it may order such eradication measures as the department deems necessary.”
Plaintiffs allege that the defendant as the “owner” of the premises was required to eradicate the bedbug infestation. Defendant alleges that plaintiffs are the “occupants in control” of the premises and have an equal obligation to keep the premises free from infestation and to eradicate the bedbug condition. However, the housing maintenance regulations and the notice to tenants prepared by NYCHA for tenants concerning bedbug infestation (plaintiffs’ exhibit No. 41), negate any implication that the plaintiffs are responsible for eradicating the bedbug condition in their apartment. NYCHA’s notice, which is given to any tenant who requests having an apartment treated for bedbugs, prohibits the tenant from undertaking the eradication of bedbugs. It specifically states that NYCHA or a NYCHA approved contractor is responsible to eradicate bedbugs. This makes complete sense because no one would want a tenant to undertake eradication of bedbugs on the tenant’s own. This could create a hazardous condition and threaten the safety of other occupants of the building.
Any argument that this section of the Housing Maintenance Code is not applicable to NYCHA is baseless. Throughout article 2 of the Administrative Code, when the legislature has wanted to exclude NYCHA from coverage, it has specifically done so. Housing Maintenance Code §§ 27-2009.1, 27-2033, 27-2056 and 27-2108 all provide for exclusions from code provisions. No similar language is provided in article 4. Therefore, the statute is applicable and NYCHA as the landlord is required to eliminate the bedbugs.
Neither side has placed into evidence the rental agreement between the parties. If the lease shifted responsibility to the plaintiffs, then presumably defendant would have produced *225 that document. Because defendant has not submitted the lease, then it must be concluded the statutory language controls. This makes it mandatory for the owner, NYCHA, to eradicate bedbugs. Whether a landlord could negate by contract this statutory mandate is questionable. Therefore, defendant NYCHA has the sole responsibility for eradication of bedbugs under this regulation. The credible evidence is that eradication of the bedbugs has not been successful in spite of the efforts of the defendant.
The testimony of the NYCHA employees and the experts leads to the conclusion that NYCHA’s efforts, though perhaps well intentioned, were and are inadequate. For instance, the experts and NYCHA’s exterminator all testified that the best practice is to remove switch plates, outlet covers, moldings and other areas which commonly serve as harborage for bedbugs prior to spraying insecticides. NYCHA does not do this before applying pesticides. It was testified that to do so would require the NYCHA maintenance department at the project site to prepare the apartment prior to the NYCHA exterminating department fumigating. The testimony is that this is never done. How could eradication be successful if the industry-accepted protocols are not followed?
Also, the testimony from NYCHA witnesses is that unless there is a complaint from an adjacent apartment, it will not be fumigated at the same time. Because the expert testimony is that bedbugs migrate and will leave one apartment if possible after fumigation, when the insecticide wears off, the bedbugs can return to the first apartment.
Defendant alleges that the plaintiffs have some responsibility for creating the conditions which prevent defendant from eradicating the bedbugs and that the Housing Maintenance Code regulation imposes liability on the part of the plaintiffs. This is a question of fact for the jury to decide, that is, did the actions or inactions of the plaintiffs prevent the defendant from eradicating the bedbug condition in their apartment. This does not relieve the defendant of its liability under the statutes but permits the defendant to present to the jury as something to be considered on this issue of the comparative fault of the plaintiffs.
Administrative Code § 27-2019 provides:
“Elimination of harborages.
“All building material, lumber, boxes, cartons, barrels, containers, machinery, raw material, fabri *226 cated goods, junk, food, animal feed and any other substance which may afford harborage or provide food for such rodents or insects and other pests shall be kept stored or handled by the owner and tenants of every dwelling in such manner as the department may require. The department may make orders to eliminate rat harborages to the person who is responsible for the conditions. The department shall uncover and inspect periodically all structural harborages which cannot be eliminated from dwellings.”
The testimony establishes that when the plaintiffs were informed that furniture or structures in their apartment were potential harborages for bedbugs, those structures or furniture pieces were eliminated or cleaned. Other areas of harborage under the control of the defendant, such as areas behind walls, switch plates and moldings were never removed by defendant even though treating such areas is in the protocol for elimination of bedbugs. It is a question of fact for the jury to decide as to whether the plaintiffs maintained their apartment in a manner to create harborages making it impossible for the defendant to eradicate the bedbug infestation. This does not relieve the defendant of liability for failing to eradicate the bedbug infestation, but may be considered by the jury on the issue of the comparative negligence of the plaintiffs.
Defendant argues that the standard to be applied is whether it acted in a reasonable manner to eradicate the bedbugs and not whether it was actually successful in doing so. Defendant needed to produce expert testimony on what is the accepted industry wide standard for eradicating bedbugs in multiple dwellings of nine or more units. None was produced. Defendant did not produce an expert familiar with the industry wide treatment of bedbugs. The fact that the bedbugs were a recurring condition leads to a conclusion that it did not act in a reasonable manner and that perhaps other steps needed to be taken.
NYCHA’s expert, an entomologist familiar with the breeding habits and lifestyle of bedbugs, opined that after the initial treatment, a second application should be made within 10 days to two weeks for optimum results. There is nothing in NYCHA’s work order records to establish that this procedure was followed. Again, how can the condition be eradicated if there is no compliance with the accepted protocol?
*227 Defendant’s expert testified that there is a difference between a recurring bedbug condition and one where the bedbugs are reintroduced. In the situation where it is a recurring condition, the same bedbugs return to the apartment indicating that the treatment was not successful. If categorized as a reintroduction condition, it would indicate that someone has done something to bring new bedbugs into the apartment. This would mean that the initial infestation was cleared and the bedbugs have been brought in by the tenant or other occupants of the building. If you are the tenant, how the bedbugs arrived is of little import. They are there. This is an example of what was noted by Sancho Panza in the song “A Little Gossip” from “The Man of La Mancha,” that is, “whether the stone hits the pitcher or the pitcher hits the stone. It’s going to be bad for the pitcher.” The bedbugs exist and have not been eradicated. Eradication was the defendant’s responsibility.
Defendant’s expert opined that because of his expertise and training he could analyze the bedbugs and determine whether they are the same ones or new ones infesting the apartment. This was not done. But this would not relieve NYCHA of its responsibility. It would go to the comparative fault of plaintiffs.
Because of the credible testimony from the experts and NYCHA’s employees as to the accepted practices to eradicate bedbugs and the evidence from NYCHA’s own files that these practices were not followed in regard to plaintiffs’ apartment, is there any reason to believe that the bedbugs could be eradicated by NYCHA as required by the Housing Maintenance Code? Albert Einstein is credited with saying that “insanity” is “doing the same thing over and over again and expecting different results.” It must be asked were NYCHA’s actions in this matter an example of Einstein’s definition.
Parenthetically, defendant has not presented any evidence that it is in compliance with section 27-2019 of the Administrative Code by producing written instructions of what is required by each tenant to prevent bedbugs from harboring in their apartment. NYCHA has produced a document given to tenants prior to spraying the insecticides so that the procedure will be successful. But nothing is in evidence establishing what is told to tenants when they move in initially to keep vermin, specifically bedbugs, from entering their apartment in the first place. In fact, if there is a recurring problem such as existed in plaintiffs’ apartment is there any attempt by NYCHA to counsel the tenant so as to reduce the potential of continuing infestation?
*228 Finally, the website maintained by the City of New York, nyc.gov, at NYC Health informs all tenants that eradication of bedbugs is the landlord’s responsibility. It goes on to note that the New York City Department of Housing Preservation and Development (HPD) lists bedbugs as a class B violation which must be corrected by the landlord within 30 days or face a penalty. The City of New York holds out to the public that the landlord is responsible. In this case it, through NYCHA, is the landlord and must take full responsibility for its failure to eliminate bedbugs in plaintiffs’ apartment. Additionally, the City of New York considers this such a serious situation that it requires a landlord to give notice to a tenant receiving a vacancy lease of a bedbug infestation history for the premises rented for the previous year (Administrative Code § 27-2018.1).
The credible evidence is that bedbugs have existed in plaintiffs’ apartment since 2012 and that the infestation continues until today. Even though a private landlord would be subject to a penalty for failing to eradicate the bedbugs, historically, HPD will not write a violation for NYCHA properties. Although a notice is given to NYCHA, no penalty attaches. This is apparently authorized by New York City Civil Court Act § 110 (c). Why this is permitted is an issue for another day in another court. Are not all tenants entitled to the same health and safety protections? And should not all landlords have to pay a penalty for violating the law? Maybe if NYCHA site managers were held accountable to the same degree as private property managers the situation would improve.
Plaintiffs’ motion for a directed verdict on the issue of the liability of defendant for failing to eradicate the bedbug infestation is granted. The statutes make eradication of bedbugs in a tenant’s apartment the obligation of the landlord, defendant NYCHA. It is mandatory and cannot be waived. NYCHA, in spite of its efforts, failed to eradicate the bedbugs.
A question of fact exists as to whether the actions of the plaintiffs made it impossible for the defendant to eradicate the bedbugs. It is a jury question as to the comparative negligence of the plaintiffs in that regard. It is also a jury question as to whether the plaintiffs have suffered any damages*

 The above written decision is an expansion of the statement read into the record at the close of the defendant’s case. The court granted the motion *229 for a directed verdict on the issue of liability. The holding is the same. This written decision has been expanded to include citations and more specific references to the testimony and evidence.
The quote from “The Man of La Mancha” (music by Mitch Leigh; lyrics by Joe Darion) is originally from “Don Quixote” by Miguel de Cervantes. It is “whether the pitcher hits the stone or the stone hits the pitcher, it goes ill for the pitcher.”